OPINION
{¶ 1} Defendant-Appellant, Salome Ramirez Jr., appeals two judgments of the Seneca County Court of Common Pleas, Juvenile Division, sentencing him upon his convictions for contributing to the unruliness of a minor and contributing to the delinquency of a minor. On appeal, Ramirez contends that his conviction for contributing to the delinquency of a minor is against the manifest weight of the evidence presented. Additionally, Ramirez asserts that the trial court erred in sentencing him to the maximum sentence for each conviction and in running his sentences consecutively. Finding that Ramirez's conviction for contributing to the delinquency of a minor is not against the manifest weight of the evidence and that the sentences imposed by the trial court are supported by the record, we affirm the judgments of the trial court.
 {¶ 2} On November 30, 2003, the Tiffin Police were called to 407 East Market Street in Tiffin, Ohio, Seneca County. Upon arrival, the officers found four juveniles in the apartment. The four juveniles were identified as Johnny Sullivan, age seventeen, Ryan Lyons, age fifteen, Rose Fonseca, age seventeen and Valine Schaade, age seventeen. Once the juveniles were identified, Fonseca was immediately taken to the hospital, where she received sixteen stitches for an injury that occurred when she punched a window in the apartment. Sullivan and Lyons were taken into custody for underage alcohol consumption and Schrader was released to her parents.
 {¶ 3} The officer's determined that was Ramirez was the person who lived at the apartment and contacted him at his job. Upon further investigation, the officers learned that Ramirez had given tattoos to both Fonseca and Schaade, without the permission of their parents.
 {¶ 4} Ramirez was charged with one count of contributing to the unruliness of minors Fonseca and Schaade in violation of R.C.2919.24(A)(1), a misdemeanor of the first degree and one count of contributing to the delinquency of minors Sullivan, Lyons and Fonseca in violation of R.C. 2919.24(A)(1), a misdemeanor of the first degree. The contributing to the unruliness of minors charge stemmed from Ramirez tattooing Fonseca and Schaade without the permission of their parents. The contributing to the delinquency of minors charge stemmed from statements made by both Fonseca and Lyons that Ramirez had purchased alcohol for them on November 30, 2003.
 {¶ 5} Ramirez pled guilty to the one count of contributing to the unruliness of minors and a jury trial was held on the remaining charge of contributing to the delinquency of minors. At trial, the State presented the testimony of Officers Ronald Green and Jason Windsor, Ramirez's neighbors, who had contacted the police on November 30, 2003, Julie Lee and Roger Drake, and, finally, the four juveniles found in Ramirez's apartment, Sullivan, Lyons, Fonseca and Schaade. Ramirez presented the testimony of himself as well as a long time friend, Kelly Johnson.
 {¶ 6} At trial both Officers Green and Windsor testified that they responded to 407 East Market Street apartment on November 30, 2003. Green stated that when they arrived, they knocked on the door of the apartment. He went on to state that when no one answered the door, he and Officer Windsor forcibly opened the door. Upon entering the house, he stated that one of the two boys was coming out of the bathroom and that the other three juveniles were in the bathroom. He also stated that Fonseca was immediately taken to the hospital and that Sullivan and Lyons were taken into custody for underage consumption. Additionally, he stated that after entering the apartment, two beer bottles were found on the coffee table.
 {¶ 7} Green also testified that he checked around Ramirez's apartment for signs of forced entry and that none were found. Specifically, he stated that the bathroom window was over eight feet off the ground and that there were no footprints or pressed grass below the window. Finally, he testified that it was highly unlikely that someone would have been able to be lifted into the bathroom window of the apartment.
 {¶ 8} Windsor additionally testified to the four juveniles being in the apartment upon entry. Windsor also testified that after Sullivan and Lyons were taken into custody they both submitted to a breathalyzer test. Windsor testified that the results of those breathalyzer tests were a .216 and .099 for Sullivan and Lyons, respectively.
 {¶ 9} The State also presented the testimony of Julie Lee and Roger Drake, who were in the adjoining apartment at the time of the November 30, 2003 incident. Lee testified that she had seen Ramirez arrive with the four juveniles earlier that afternoon and stated that both Ramirez and one of the other boys were carrying cases of beer. She also stated that she saw Ramirez leave by himself and that after he left she heard a great deal of commotion in the apartment. Finally, she stated that she called the police when she heard a loud bang and a girl begging for help. Drake also testified that he heard a girl yelling that she was hurt.
 {¶ 10} Finally, the State presented the testimony of the four juveniles that were found in Ramirez's apartment. Both Fonseca and Schaade testified that they had contacted Ramirez on the morning of November 30, 2003, so that Ramirez could finish the tattoos he had started on them. When they talked with him, they stated that Ramirez had told them to come over to his apartment so that he could finish up the tattoos. Once at his apartment, they stated that Ramirez agreed to take them to Nevada, Ohio, in Wyandot County, to pick up their boyfriends, Sullivan and Lyons.
 {¶ 11} All four of the juveniles testified that after Sullivan and Lyons had been picked up, Ramirez then drove to Bucyrus, Ohio, in Crawford County. Each of the four testified that on the way to Bucyrus, they were drinking vodka and orange juice out of a bottle. Fonseca stated that Ramirez had bought the vodka and orange juice the night before and that she had been drinking it in the car with Ramirez at that time as well. The four juveniles all testified that Ramirez knew they were drinking the vodka and orange juice in the car and that he had given them permission to do so.
 {¶ 12} The four juveniles also testified that upon getting to Bucyrus, Fonseca and Schaade went to a Taco Bell to use the restroom and Ramirez bought a case of Bud Light beer. Each then testified that before leaving Bucyrus Ramirez stopped at a friend's house for a few minutes. The four then testified that they were all drinking the Bud Light beer on the drive from Bucyrus to Tiffin. Each stated that Ramirez knew they were drinking the beer, that he allowed them to do so and that he told them to watch out for police officers.
 {¶ 13} The juveniles went on to testify that upon arriving back in Tiffin, Ramirez purchased a second case of Bud Light beer. While Fonseca and Schaade stated that Ramirez paid for the second case of beer, Sullivan and Lyons claimed to have given Ramirez money for the second case of beer.
 {¶ 14} The juveniles then testified that once they returned to Ramirez's apartment they were all just hanging out, talking and listening to music. Again, each testified that Ramirez saw them drinking the beer and that he allowed them to do so. The juveniles went on to testify that when Ramirez left for work, he told them that they could stay at his apartment and finish off the beer.
 {¶ 15} Each of the four juveniles testified that after Ramirez left for work the four continued to drink the beer. Fonseca stated that shortly after Ramirez left, she and Sullivan got into an argument, because Sullivan's wallet was missing. She stated that she was fairly drunk at that point. She also stated that when she went to punch what she believed to be a solid door, she actually put her hand through a window and cut her arm. Each of the four testified that she was bleeding profusely and that they took her into the bathroom to try and stop the bleeding. The four then testified that when the police then entered the house, Fonseca was taken to the hospital, Sullivan and Lyons were taken into custody and Schaade's parents were called to come pick her up.
 {¶ 16} Ramirez presented the testimony of himself and Kelly Johnson. Johnson testified as a character witness for Ramirez, stating that she had known him for twenty-five years and that her daughter was good friends with Ramirez's twelve year old daughter. Johnson stated that she allowed her daughter to stay over at his house and that she believed that he was a good parent.
 {¶ 17} Finally, Ramirez took the stand. According to Ramirez's testimony, he did tell Fonseca and Schaade to come to his apartment on the morning of November 30, 2003, so that he could finish their tattoos. He also stated that he did take them to Nevada, Ohio, to pick up Sullivan and Lyons and that they did go to Bucyrus, Ohio, on the way back to Tiffin, so that he could stop and talk to a friend.
 {¶ 18} Ramirez stated that he did not provide the four juveniles with vodka and orange juice in his vehicle and that he did not buy any cases of Bud Light beer for the juveniles. He stated that he there was vodka and orange juice in the back of his vehicle, but that he did not allow the juveniles to drink it and that he did not see any of the juveniles drinking it in his vehicle. Additionally, he stated that he did buy a case of Bud Light beer when he got back to Tiffin with the four juveniles; however, he stated that he purchased the beer to drink himself after he got off of work.
 {¶ 19} Finally, Ramirez testified that he did not allow the four juveniles to stay in his apartment when he went to work. According to Ramirez, he dropped the four off somewhere in Tiffin on his way to work. He opined that the four must have broke into his apartment after he went to work and drank the beer at that point. He stated that, when he returned to his apartment after the police had called him, Schaade stated that Fonseca had climbed in through his bathroom window and that is how they had gained access to the apartment. According to Ramirez, Schaade made this statement in front of Officer Green. Finally, he stated that he told the police that the juveniles had broken in and that the police would not properly investigate the scene.
 {¶ 20} Upon presentation of all the evidence, the jury found Ramirez guilty of contributing to the delinquency of a minor. Subsequently, a sentencing hearing was held and Ramirez was sentenced on both convictions. In a single judgment entry bearing both case numbers, the trial court sentenced Ramirez to a term of one hundred and eighty days for each conviction to be served consecutively. The judgments have been consolidated for the purposes of this appeal, and we are presented with the following assignments of error for our review.
 Assignment of Error No. I The jury's decision to find the appeallant guilty beyond a reasonabledoubt was against the manifest weight of the evidence.
 Assignment of Error No. II The court erred in sentencing the appelant to the maximum sentence ineach charge and running the sentences consecutive.
 Assignment of Error No. I {¶ 21} In the first assignment of error, Ramirez asserts that the jury's finding him guilty on the charge of contributing to the delinquency of a minor was against the manifest weight of the evidence presented.
 {¶ 22} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 23} According to Ramirez, the State's evidence failed to establish that he furnished the juveniles with alcohol. Rather, he claims that the evidence presented only established that the juveniles committed a felony count of burglary. Additionally, he asserts that the while the State's presentation of evidence that Ramirez provided the juveniles with alcohol in two other counties may have been proper under the rules of evidence, it was only used to confuse the jury.
 {¶ 24} As noted above, each of the four juveniles testified that Ramirez purchased a case of beer for them once they retuned to Tiffin, Ohio. Additionally, each stated that Ramirez knew they were drinking the beer and allowed them to do so at his apartment. While Ramirez correctly points out that some of the juvenile's testimony was slightly conflicting, the State nevertheless put on evidence that Ramirez had provided the juvenile's with alcohol in Seneca County. Additionally, Ramirez did testify that he did not purchase the beer for the juveniles and that he dropped them off before going to work; however, this argument comes down to one of credibility. The weight of the evidence and credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, para. one of the syllabus. Upon review of the record, we cannot find that the jury clearly lost its way or created such a manifest injustice that reversal is required.
 {¶ 25} Thus, the first assignment of error is overruled.
 Assignment of Error No. II {¶ 26} In the second assignment of error, Ramirez asserts that the trial court erred in sentencing him to the maximum sentence on each count and in running his sentences consecutive. Specifically, Ramirez asserts that the trial court failed to consider all of the factors under R.C.2929.22.
 {¶ 27} R.C. 2929.22 provides the sentencing guidelines for misdemeanor sentencing. R.C. 2929.22 provides:
(A) In determining whether to impose imprisonment or a fine, or both,for a misdemeanor, and in determining the term of imprisonment and theamount and method of payment of a fine for a misdemeanor, the court shallconsider the risk that the offender will commit another offense and theneed for protecting the public from the risk; the nature andcircumstances of the offense; the correctional or rehabilitativetreatment; * * * and the ability and resources of the offender and thenature of the burden that payment of a fine will impose on the offender.
 (B)(1) The following do not control the court's discretion but shall beconsidered in favor of imposing imprisonment for a misdemeanor:
 (a) The offender is a repeat or dangerous offender; * * *
 (C) The criteria listed in divisions (C) and (E) of section 2929.12 ofthe Revised Code that mitigate the seriousness of the offense and thatindicate that the offender is unlikely to commit future crimes do notcontrol the court's discretion but shall be considered against imposingimprisonment for a misdemeanor.
 (D) The criteria listed in division (B) and referred to in division (C)of this section shall not be construed to limit the matters that may beconsidered in determining whether to impose imprisonment for amisdemeanor.
 (E) The court shall not impose a fine in addition to imprisonment for amisdemeanor unless a fine is specially adapted to deterrence of theoffense or the correction of the offender, the offense has proximatelyresulted in physical harm to the person or property of another, or theoffense was committed for hire or for purpose of gain.
 (F) The court shall not impose a fine or fines that in the aggregateand to the extent not suspended by the court, exceed the amount that theoffender is or will be able to pay by the method and within the timeallowed without undue hardship to the offender or the offender'sdependents or will prevent the offender from making restitution orreparation to the victim of the offender's offense.[1]
 {¶ 28} In the case sub judice, Ramirez was sentenced to two terms of one hundred and eighty days for each conviction, to be served consecutively. Additionally, the trial court ordered Ramirez pay a fine of seven hundred and fifty dollars for each conviction.[2]
 {¶ 29} "Unlike the imposition of maximum or consecutive sentences for felonies, the Ohio Revised Code does not provide any requirements for imposing maximum or consecutive sentences of misdemeanors, other than limiting the total amount of months that may be served to 18." State v.Strohm, 153 Ohio App.3d 1, 2003-Ohio-1202, ¶ 7. R.C. 2929.22 sets forth factors that must be considered when determining the appropriate sentence to impose for a misdemeanor offense. Failure to consider these factors is an abuse of discretion. State v. Wagner (1992),80 Ohio App.3d 88, 95.
 {¶ 30} Although it is preferable that the trial court state on the record that it is has considered the foregoing criteria prior to sentencing a misdemeanor offender, we can find no requirement that it must do so. Rather, this Court will presume that, in sentencing a misdemeanor offender, the trial court has considered the factors set forth in R.C. 2929.22 when the sentence is within the statutory limits and there is no affirmative showing that the trial court failed to do so. See, State v. Ward, 3d Dist. Nos. 1-03-70, 1-03-73, 1-03-74, 0-03-75, 2004-Ohio-4156, ¶ 10; State v. Polick (1995),101 Ohio App.3d 428, 431; State v. Gilbo (1994), 96 Ohio App.3d 332,340; State v. Cole (1982), 8 Ohio App.3d 416, para. 3 of syllabus. Thus, absent proof to the contrary, the trial court is presumed to have considered the factors enumerated in R.C. 2929.22 and, by reference, R.C. 2929.12. Furthermore, unless the record contains an affirmative indication that the trial court failed to consider the statutory criteria, the trial judge's sentence will not be reversed. Polick,101 Ohio App.3d at 431.
 {¶ 31} Upon review of the record, we find no indication that the trial court failed to consider the factors of R.C. 2929.22. Thus, because the sentence imposed upon Ramirez falls within the statutory limits of R.C.2929.21 and there is no indication that the trial court failed to consider the factors of R.C. 2929.22, we cannot say that the trial court abused its discretion in sentencing Ramirez to maximum, consecutive terms of imprisonment.
 {¶ 32} Accordingly, the second assignment of error is overruled.
 {¶ 33} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgments Affirmed.
 Cupp, P.J. and Shaw, J., concur.
[1] While Ramirez included the present version of R.C. 2929.22 in his brief, we must consider the version of R.C. 2929.22 as it read at the time that the offense was committed. Accordingly, we consider the version of R.C. 2929.22 that was in effect at the time of the offense, November 30, 2003.
[2] Ramirez does not challenge the imposition of the fines, but only challenges the length and the consecutive nature of the jail terms.